**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
**ROBERTA ADAMS,**

                          Plaintiff,

     -against-

**THE CITY OF NEW YORK, DETECTIVE GEORGE KATRIS (Shield 1168, Narcotics Borough Queens), and POLICE OFFICERS, DETECTIVES AND SUPERVISORS JOHN and JANE DOES 1-8,**

                        Defendants.
------------------------------------------------------------------------X

**15 CV 2555**

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff **ROBERTA ADAMS**, by her attorney, Joel Berger, Esq., for her complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

       1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

       2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

       3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

       4.     The jurisdiction of the Court is also predicated upon the Court's Diversity Jurisdiction, 28 U.S.C § 1332, in that plaintiff is a citizen of North Carolina who was visiting New York State at the time of the Incidents alleged herein, all defendants are citizens of the State of New York, and the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) (2), in that all of the events giving rise to the claim -- plaintiff's arrest and imprisonment in Queens County, defendants conduct in bringing about the prosecution of plaintiff in Queens County, and the decision of the Queens County Grand Jury to return No True Bill -- have occurred within this District.

## *PENDENT JURISDICTION*

6. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

7. On March 26, 2015, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

8. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

9. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

10. Plaintiff demands trial by jury in this action.

## *PARTIES*

11. Plaintiff **ROBERTA ADAMS**, age 56, is an African-American woman and a citizen of the United States.

12. Plaintiff is a resident of the City of Wilmington in the State of North Carolina.

13. At all times relevant herein, plaintiff was staying at the Jamaica, NY home of her mother, Ms. Pearl Harris, to help care for her mother because Ms. Harris was in ill health.

2

14. Plaintiff has no criminal record of any kind, having never been convicted of any offense and having never even been arrested other than on the occasion of the Incidents alleged herein.

15. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

16. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers, including the individually named defendants herein.

17. At all times relevant herein, defendant George Katris, Shield 1168, was a detective employed by the NYPD, assigned to Narcotics Borough Queens.

18. At all times relevant herein, defendants John and Jane Does 1-8 were police officers, detectives and supervisory police officers assigned to Narcotics Borough Queens or other NYPD commands. Plaintiff does not at this time know the real names and shield numbers of defendants John and Jane Does 1-8 at this time.

19. At all times relevant herein, defendants Katris and John and Jane Does 1-8 were acting as agents, servants and employees of defendant City of New York and the NYPD.

20. At all times relevant herein, all defendants were all acting under color of state law.

### FACTS

21. At approximately 6:00 A.M. on Thursday, January 8, 2015, at a private house located at 108-34 Union Hall Street, Jamaica, NY 11433, owned by plaintiff's mother, Ms. Pearl Harris, numerous officers of the New York City Police Department raided the house, kicking in the door

without first knocking or announcing their presence.

22. Plaintiff Roberta Adams, a 56 year-old African-American resident of Wilmington, North Carolina, who had never before been arrested and has no criminal record of any kind, and who had moved from North Carolina to Jamaica, Queens temporarily in September 2014 to help care for her mother who has been in ill health, was living in her mother's Jamaica house at the time of the raid.

23. The police apparently had a search warrant, but if so it was directed solely at another occupant of the house: Ramel Adams, age 26, a nephew of Roberta Adams.

24. The police had no information at the time of the raid indicating that Roberta Adams was involved in any illegal activities.

25. The police had conducted previous raids on the house, all directed at Ramel Adams or his brother, Shelmar Adams, although none had been conducted since plaintiff had arrived in September of 2014 to help care for her ailing mother.

26. The only contraband allegedly found inside the house on January 8, 2015, was inside Ramel Adams's bedroom, located on the second floor of the house.

27. Most of the contraband allegedly found in Ramel Adams's bedroom was hidden inside a shoe holder in a closet, and a small amount (four ziplock bags of cocaine) was allegedly found "next to the bed" in Ramel Adams's bedroom.

28. No contraband was found in any other room or any other area of the house.

29. No contraband was found on Ms. Roberta Adams's person.

30. Roberta Adams was living in a separate bedroom on the second floor of the house, entirely distinct from Ramel Adams's bedroom.

31. No contraband was found in Roberta Adams's bedroom

4

32. No contraband was found in any common area of the house.

33. Roberta Adams was not in the bedroom of Ramel Adams at the time of the raid

34. The police did not observe Roberta Adams exiting Ramel Adams's bedroom at the time of the raid.

35. The contraband found in Ramel Adams's room was not within Roberta Adams's open view.

36. Roberta Adams was not in close proximity to the contraband found in Ramel Adams's bedroom.

37. There was absolutely no probable cause for any claim that Roberta Adams had constructive possession of, or any connection whatsoever with, the contraband found in the bedroom of Ramel Adams.

38. Despite the fact that no contraband was found on Roberta Adams's person or in her bedroom or even in any common area of the house, or anywhere within her open view or in close proximity to her, the police arbitrarily and without probable cause chose to arrest Roberta Adams in addition to Ramel Adams.

39. Plaintiff was kept handcuffed in a police van for approximately three hours, and then transported to a police precinct, where police officers interrogated her and demanded that she provide information concerning Ramel Adams.

40. Roberta Adams exercised her right to remain silent and requested an attorney.

41. When Ms. Adams exercised her right to remain silent and requested an attorney, the police retaliated by writing up spurious charges against her, accusing her as well as Ramel Adams of knowingly and unlawfully possessing a narcotic drug with intent to sell it (Penal Law § 220.16 (1)), a

Class B Felony, and knowingly and unlawfully possessing of one or more preparations, compounds, mixtures or substances containing a narcotic drug (Penal Law § 220.09 (1)), a Class C Felony.

42. The felony complaint against plaintiff was sworn to by defendant Detective Katris.

43. Based upon these charges, plaintiff was kept in a cell at the precinct and was eventually transported from the precinct to Queens Central Booking in handcuffs.

44. Plaintiff was photographed and fingerprinted at Queens Central Booking.

45. Plaintiff was handcuffed or kept in squalid cells throughout her captivity.

46. Ms. Adams remained at Queens Central Booking until approximately 1:00 A.M. on Friday, January 9 2015, at which time she was brought before a Queens Criminal Court Judge.

47. The Court released plaintiff on her own recognizance even though the charges were Class B and Class C felonies.

48. By the time she was freed Roberta Adams had been imprisoned for approximately 19 hours.

49. Roberta Adams subsequently testified before a Queens County Grand Jury, accompanied before the Grand Jury by her defense attorney, Anju Alexander, Esq. of the Legal Aid Society.

50. On February 19, 2015, the Grand Jury returned No True Bill as to all charges against Roberta Adams.

51. The Criminal Court felony complaint against plaintiff was formally dismissed on March 18, 2015.

52. The only allegation of the felony complaint even remotely connecting Roberta Adams to any illegality had been defendant Katris's allegation that he supposedly observed Roberta Adams

"running away from the *vicinity* of said bedroom [Ramel Adams's bedroom]" (emphasis added), not that she was seen in the bedroom or seen exiting it.

53. According to both plaintiff and attorney Alexander who were present for plaintiff's Grand Jury testimony, plaintiff was not even asked at the Grand Jury by the prosecutor or by any of the Grand Jurors about the allegation that she was allegedly "running away" from "the vicinity" of Ramel Adams's bedroom.

54. If defendant Katris or any other police officer presented any testimony against plaintiff Roberta Adams before the Queens County Grand Jury, the Grand Jury, by returning No True Bill, necessarily found that any such testimony was either (i) facially insufficient, like the complaint, to charge plaintiff with any criminal offense or (ii) not credible.

55. Plaintiff's bedroom was on the same floor as Ramel's, and she merely exited her bedroom and looked over the staircase banister to observe the police coming up the stairs. There was not even any room on the second floor staircase landing where she was arrested to be "running away" from anything.

56. The arresting officers and their supervisors knew, were required to know, and should have known that there could not remotely be any plausible claim of constructive possession against plaintiff.

57. New York law is clear that for a presumption of constructive possession to apply the drugs must be in "open view" *and* the arrested person must be "in close proximity" to them. Penal Law § 220.25 (2).

58. The felony complaint on its face did not meet either of these requirements.

59. The contraband found in Ramel Adams's bedroom was not within plaintiff's open

7

view.

60.     Plaintiff was not in close proximity to the contraband found Ramel Adams's bedroom.

61.     The vague allegation that plaintiff was supposedly "running away" from "the vicinity" of Ramel Adams's bedroom was facially insufficient and Detective Katris and John and Jane Doe defendants herein knew so.

62.     There was absolutely no evidence that plaintiff ever exercised dominion or control over Ramel Adams's bedroom or anything within Ramel Adams's bedroom.

63.     The NYPD has a uniform policy and practice of arresting most adults in a raided dwelling if any one individual in the apartment is arrested. Even if there are individuals in the dwelling who did not possess any contraband and were not in close proximity to any contraband, and even where there was no contraband in open view, the NYPD uniformly arrests most adults in the dwelling.

64.     Several recent cases in which the undersigned represented the plaintiffs, all settled by the City of New York, demonstrate this uniform policy:

(a)     *Kerr v. The City of New York*, 10 CV 4592 (RJH) (JLC) (SDNY): the only drugs found inside Ms. Kerr's Manhattan apartment were hidden in her 17 year-old son's bedroom -- hidden in a men's athletic shoe within that bedroom. No contraband was found on Ms. Kerr's person or in her bedroom. No contraband was found in close proximity to Ms. Kerr. No contraband was found in open view or in any common area within the apartment. Ms. Kerr was nonetheless arrested, but the charge was dismissed at the first court date. At a settlement conference the Assistant Corporation Counsel argued that Ms. Kerr was criminally responsible simply because she was the leaseholder of the apartment, *i.e.*, that the parents of any teenager who

8

has hidden drugs in his bedroom are strictly liable for criminal possession of drugs merely because they own or lease the home where their child lives. The City ultimately settled the *Kerr* case for $75,000 at a settlement conference before Magistrate Judge Cott on November 29, 2010.

      (b)    *Reed v. The City of New York*, 10 CV 3215 (LTS) (RLE) (SDNY): the only drugs recovered (four misdemeanor weight "twists" of crack cocaine) were in the pocket of a men's jacket belonging to a male visitor to Ms. Reed's Brooklyn apartment, found in the bedroom of Ms. Reed's teenage daughter who was the girlfriend of the visitor. The police nonetheless arrested Ms. Reed. Prosecution was declined after Ms. Reed had been incarcerated for approximately 21 hours. The City settled for $75,000 at a settlement conference before Magistrate Judge Ellis on August 30, 2010.

      (c)    *Lozada and Sealy v. The City of New York*, 09 CV 9671 (LAK) (KNF) (SDNY): the only contraband recovered had been hidden in a hallway just above the apartment door by Ms. Lozada's brother, who frequently stayed in Ms. Lozada's Brooklyn apartment. The brother was the target of the warrant, based upon three sales to undercover officers in the neighborhood and the building -- but not in the apartment. The police nonetheless arrested Ms. Lozada and Mr. Sealy (her teenage son), simply because they lived in the apartment. Prosecution was declined in the case after approximately 24 hours imprisonment, and the City settled for $120,000 ($60,000 to each plaintiff) at a settlement conference before Magistrate Judge Fox on April 14, 2010.

      (d)    *Chiclana v. The City of New York*, 09 CV 623 (CM) (MHD) (SDNY): the only contraband found was a small quantity of marijuana in a pocket of pants worn by a male visitor to the apartment at the time of the raid, yet the detectives arrested the uninvolved Ms. Chiclana who lived in the apartment. Prosecution was declined after approximately 20 hours of imprisonment,

9

and the City settled for $50,000 at a conference before Magistrate Judge Dolinger in June 2009.

(e) *Robinson v. The City of New York*, 12 CV 4220 (SJ) (JMA) (EDNY): plaintiff Erika Robinson was asleep in her nightclothes, in a bedroom shared with her sister, when the police raided the Brooklyn apartment. The only contraband found in the apartment, a ziplock bag allegedly containing a small residue of marijuana, was found at a location nowhere near of plaintiff's bedroom. All residents of the apartment were initially arrested and taken in handcuffs to the 76th Precinct. Plaintiff was kept at the precinct in her nightclothes for approximately 9 hours before the police realized that they could not charge her with having anything to do with the ziplock bag containing a tiny residue of marijuana, and she was released. (The plaintiff's mother was initially wrongfully charged with the misdemeanor of public possession of marijuana even though the ziplock bag had been found within the privacy of an apartment; she eventually accepted an Adjournment in Contemplation of dismissal to the correct charge and did not sue.). The City settled Erika Robinson's case for $20,000 on October 29, 2012, at a conference before Magistrate Judge (now District Court Judge) Azrack.

65. The *Kerr*, *Reed*, *Lozada/Sealey*, *Chiclana*, and *Robinson* cases all demonstrate that the arrest, imprisonment and charging of plaintiff Roberta Adams in this case with narcotics felonies was anything but an aberration. The NYPD persists in a pattern of deliberate indifference to the constitutional and civil rights of innocent bystanders in dwellings where contraband is found.

66. Defendant Detective Katris was recently a defendant in another case before this Court, *Cush v. Yeung*, 13 CV 4827 (MKB) (VVP), accused of stopping a vehicle for no lawful reason and then falsifying a charge that a passenger in the vehicle was in possession of a

controlled substance when in fact the passenger did not possess any contraband and had committed no crime. The allegedly fabricated criminal charge was dismissed and the City settled the lawsuit.

67. In this case Plaintiff Roberta Adams, an innocent 56 year-old visitor to New York City with no criminal record who was merely living here in an effort to be of assistance to a sick mother, was severely traumatized by her arrest, imprisonment and the need to face baseless criminal charges before a Grand Jury, and she has suffered substantial harm for which she is entitled to monetary damages.

### FIRST CLAIM FOR RELIEF

68. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-67.

69. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

70. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-67 and 69.

71. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers.

72. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

73. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-55, 57 and 59-60 violated plaintiff's rights guaranteed by 42 USC § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

74. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-67, 69, and 71-73.

75. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, and employee negligence.

76. The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

77. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-67, 69, 71-73, and 75-76.

77. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

 (c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

 (d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
   May 5, 2015

            /s/ Joel Berger
            **JOEL BERGER**
            360 Lexington Avenue, 16th Fl.
            New York, New York 10017
            (212) 687-1425

            **ATTORNEY FOR PLAINTIFF**